IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CENTURY METAL RECYCLING PRIVATE LIMITED, | * |
| Plaintiff | * |
| v. | CIVIL NO. JKB-12-2650 |
| METAL WORLDWIDE, INC., *et al.* | * |
| Defendants | * |

**MEMORANDUM**

*I. Background*

The complaint in this case was filed in the District of Connecticut on July 5, 2011, by Century Metal Recycling Private Limited ("Century Metal") against Metal Worldwide, Inc. ("MWI"), Sachin Chhabra ("Chhabra"), R.K. Enterprises USA, Inc. ("RKE"), Worldwide Metal LLC ("Worldwide"), and Tarun Chhabra ("T. Chhabra"). (Compl., ECF No. 1.) Century Metal subsequently filed an amended complaint that added another count against RKE. (ECF No. 56.) All Defendants filed motions to dismiss on various grounds including lack of personal jurisdiction. (ECF Nos. 57–63, 66.) On August 2, 2012, the motions to dismiss for lack of personal jurisdiction were granted but, rather than dismissing the case, the court transferred it to the District of Maryland; all Defendants except RKE did not object to this Court's jurisdiction, and as to RKE, the transferring court determined that RKE would be subject to personal jurisdiction in Maryland based on its lease of office space here. (Ruling 22-23, ECF No. 96.) Following transfer to this Court, the case was stayed for several months pending a bankruptcy filing by RKE and settlement negotiations. The bankruptcy proceeding has been concluded and

the parties are ready to have this Court address the remainder of their motions to dismiss. No Defendant has renewed any argument pertaining to personal jurisdiction, and the Court finds that all Defendants have conceded the issue.

Also pending before the Court is Century Metal's motion for joinder and for leave to amend the amended complaint to add a new defendant and new counts against all defendants that include statutory theft under Connecticut law, unjust enrichment, conversion, and civil conspiracy. (ECF No. 118.) All Defendants except RKE (which, apparently at the time, had already filed its bankruptcy petition) filed a response to Century Metal's motion requesting that the Court rule first on the pending motions to dismiss before they are required to respond in substance to Century Metal's motion for leave to file a second amended complaint. (ECF No. 123.) The Court will grant Defendants' request and will set a briefing schedule in the order accompanying this memorandum opinion.

The issues remaining in the Defendants' motions to dismiss have been fully briefed (ECF Nos. 70, 72, 73, 76, 84, 86, 88, 90), and no hearing is necessary, Local Rule 105.6 (D. Md. 2011). MWI's and Chhabra's motion will be granted in part and denied in part, Worldwide's motion will be denied, T. Chhabra's motion will be granted, and RKE's motion will be granted in part and denied in part.

## II. *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the

*Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Additionally, a fraud claim must be pleaded with particularity. Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The "circumstances constituting fraud" include time, place, and contents of the fraudulent representation, the identity of the person making the misrepresentation, and what that person obtained. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).

### III. *Allegations of the Complaint*

Century Metal is a foreign corporation registered in India with factories in India and its principal United States offices in Connecticut. (Am. Compl. ¶ 1, ECF No. 56.) It alleges that it entered into a series of contracts with MWI, which is a Florida corporation with its principal place of business in Florida. In these contracts, MWI was to provide and Century Metal was to purchase containers of Zorba, an aluminum scrap metal. (*Id.* ¶ 11.)[1] In furtherance of these contracts, Century Metal made advanced payments of $2,901,159 to MWI. (*Id.* ¶ 14.) In return,

---

[1] The Court notes that the amended complaint indicates copies of these contracts are attached to the amended complaint as Exhibit A. (Am. Compl. ¶ 11.) The amended complaint, in actuality, does not have any exhibits accessible by the Court. However, the Court has found in the docket an additional filing with substitute exhibits that seem to correspond to the amended complaint's exhibits. (ECF No. 64.)

3

MWI provided containers of Zorba totaling $2,136,881, but did not provide any Zorba for the remaining $764,278 balance. (*Id.* ¶ 15.) MWI refunded $137,800 to Century Metal, leaving an outstanding balance of $626,478 retained by MWI but for which Century Metal did not receive the contracted Zorba. (*Id.*) In addition to the outstanding balance due, Century Metal claims it continues to be damaged because it lost at least $100,000 by way of interest and market price fluctuation. (*Id.* ¶ 16.)

On April 4, 2011, Chhabra, president of MWI, delivered to Century Metal a letter with the subject line, "Balance Due on Metal Worldwide Inc." (Substitute Ex. B, ECF No. 64.) In the letter, Chhabra confirmed that $600,000 was the outstanding balance due to Century Metal on the date of the letter. Further, the letter stated:

> We undertake to pay this amount as, $ 250,000 by 15th April, 2011, $ 250,000 by 15th May 2011 and $100,000 by 30th May, 2011. It is further agreed that [Century Metal] has lost $ 100,000 by way of interest and market price difference due to non performance of contracts by us. It is agreed that we will further pay $ 50,000 by 30th June 2011 as compensation to [Century Metal] in full and final settlement.
>
> In case we default in any of the payments, then [Century Metal] shall be entitled to receive full compensation of $ 100,000 + $ 600,000 priciple [*sic*] + interest @ 15% pa compunded [*sic*] montthly [*sic*] from 1st April 2011 to the date of payment.

(*Id.*) Century Metal alleges this letter was signed by Chhabra in the presence of Century Metal's representative, Rajiv Kaushal, who was at all relevant times in the complaint located in Connecticut. (Am. Compl. ¶¶ 12, 13, 18.)

On April 8, Connecticut counsel for Century Metal responded with a letter:

> Please be advised that my client accepts the terms of your offer, as relayed in that correspondence [referring to the letter of April 4, 2011], to pay the outstanding balance due. Notwithstanding, my clients reiterate that such acceptance does not constitute any waiver, express or implied, of any of its [*sic*] rights to collect the full balance due, in addition to interest and costs, in the event of any default in your obligations or failure to make payments when due, without further notice. To the extent that any such default occurs, my client will fully

4

exercise all available legal rights, including with respect to seeking prejudgment or equitable relief. Naturally, I hope that will not be necessary and we look forward to you abiding by the payment schedule as agreed.

(Substitute Ex. C.) Century Metal alleges that, despite its repeated demands, MWI and Chhabra have failed to make a single payment under this payment contract.

Century Metal further alleges that on March 21, 2011, MWI filed for voluntary dissolution of the corporation, and the petition was granted on April 30, 2011. (Am. Compl. ¶¶ 23, 24.) Moreover, Chhabra and MWI misrepresented MWI's financial condition and concealed its corporate dissolution in their April 2011 dealings with Century Metal and neither Defendant intended to honor the terms of the payment contract; additionally, Chhabra and MWI falsely reassured Century Metal that they would perform the payment contract in telephone calls, text messages, and electronic messages to Century Metal. (*Id.* ¶¶ 28-30.[2]) Chhabra and MWI allegedly followed this course of action to induce Century Metal to enter into the payment contract and to delay it from pursuing its legal remedies to obtain payment on the outstanding balance while Chhabra and MWI were dissolving the corporation and diverting funds to other entities to avoid collection. (*Id.* ¶¶ 31, 34.[3]) The entities to whom the corporate assets were diverted are alleged to be Chhabra; Worldwide, formed by Chhabra in conjunction with the dissolution of MWI and alleged to be a successor corporation to MWI; and RKE, also alleged to be a successor to MWI. (*Id.* ¶¶ 35,[4] 43,[5] 47,[6] 63.[7]) In addition, Chhabra and RKE are alleged to have unity of interest with and to be alter egos of MWI. (*Id.* ¶¶ 40,[8] 72.[9]) RKE is alleged to

---

[2] Misnumbered as ¶¶ 25-27 in Count Two. The Federal Rules require numbered paragraphs in pleadings. Fed. R. Civ. P. 10(b). The Court believes that the only reasonable interpretation of this rule is that each number will be used once, not multiple times as Plaintiff has done. Before the Court will consider Plaintiff's motion for leave to amend its complaint, Plaintiff will be required to rectify this problem.
[3] Misnumbered as ¶¶ 28 and 31 in Count Two.
[4] Misnumbered as ¶ 32 in Count Two.
[5] Misnumbered as ¶ 32 in Count Four.
[6] Misnumbered as ¶ 32 in Count Five.
[7] Misnumbered as ¶ 36 in Count Eight.
[8] Misnumbered as ¶ 36 in Count Three.

have participated in the negotiations between MWI and Century Metal leading up to the payment contract, to have solicited the same kind of business from Century Metal during early 2011, and to share the same office address with Worldwide. (*Id.* ¶¶ 5, 6, 59–63.[10])

## IV. Analysis

The amended complaint presents two substantive claims for breach of contract and fraud. Century Metal has pleaded these two causes of action either directly or indirectly against Defendants. Indirect liability arises in the counts asserting either liability under a theory of unity of interest and alter ego or successor liability.

### A. Breach of Contract

MWI is the only Defendant in Count One, which alleges breach of contract. Specifically, Century Metal has pleaded breach of the Zorba container contracts and breach of the payment contract. (*Id.* ¶ 23.) MWI has not argued that Count One fails to state a claim of breach of the Zorba container contracts, and the allegations clearly do state such a breach. Instead, MWI apparently concedes that point and argues only that the payment contract never came into being, so it cannot be sued for breaching it. (MWI/Chhabra's Mot. Dismiss 9, ECF No. 60.)

MWI further asserts that Florida law should be applied to Count One, but has not convincingly argued that point. Sitting in diversity, this Court applies the law of the forum state, which is Maryland. *Erie R.R. Co. v. Tompkins*, 304 U.S 64, 78 (1938). This Court is also bound in this diversity case to apply Maryland's rules for choice of law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013).

> As to choice of law questions regarding contract issues, Maryland courts generally follow the lex loci contractus approach and thus hold that while the law

---

[9] Misnumbered as ¶ 39 in Count Nine.
[10] Misnumbered as ¶¶ 32–36 in Count Eight.

of the forum governs the remedy for breach of contract, the law of the place of contracting governs questions regarding the nature, validity and construction of a contract unless such law would violate a strong public policy of Maryland.

*Guinness v. Ward*, 955 F.2d 875, 893 n.13 (4th Cir. 1992) (citations omitted).

The two pieces of paper at issue in Century Metal's claim of breach of the payment contract were allegedly signed in Connecticut. Certainly, the last one was signed and placed into the mail there, and Century Metal alleges this second letter constituted acceptance of the offer, thereby creating the payment contract. Whether a contract was formed, therefore, is determined by reference to Connecticut law. MWI argues that Century Metal's letter of response to MWI's letter constituted not an acceptance but a counteroffer that rejected MWI's offer; thus, without MWI's acceptance of Century Metal's counteroffer, no contract was formed. MWI's argument misinterprets the wording of Century Metal's response, which unequivocally accepted MWI's offer and merely reminded MWI that Century had legal remedies under Connecticut law and intended to use them if MWI defaulted on the payment contract. Had MWI's offer included language indicating that its proposed remedy in case of default was exclusive to any other remedy Century Metal possessed in law, then perhaps MWI's argument would be more persuasive. But the Court interprets the two communications as an offer and an acceptance that created a contract. This interpretation is consistent with Connecticut law defining a counteroffer as including "[a] reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered," *Ziotas v. Reardon Law Firm, P.C.*, 959 A.2d 1013, 1025 (Conn. App. Ct. 2008), *rev'd in part on other grounds*, 997 A.2d 453 (Conn. 2010), and "[a]ny qualification of or departure from the terms in which the offer was made by the offeror," *Cavallo v. Lewis*, 473 A.2d 338, 340 (Conn. App. Ct. 1984).

Even if Century Metal's response is interpreted as a counteroffer, then the complaint's allegations allow an inference that the counteroffer was accepted by MWI. The complaint

alleges that MWI and Chhabra, after the April 8 response by Century Metal, "continued to falsely reassure Century Metal that Defendants would perform the Payment Contract or some altered version thereof in telephone calls to Century Metal in Connecticut, text messages delivered to Century Metal in Connecticut and/or electronic written messages delivered to Century Metal in Connecticut." (Am. Compl. ¶ 30.[11]) Construing the complaint's allegations in Plaintiff's favor, to the extent that Century Metal's response constituted a counteroffer, Century Metal has plausibly alleged that MWI accepted it by virtue of numerous communications promising to perform. *See John J. Brennan Const. Corp., Inc. v. City of Shelton*, 448 A.2d 180, 187 (Conn. 1982) ("It is axiomatic that, regardless of a party's actual intent, if he conducts himself so as to lead the other party reasonably to conclude that he is accepting an offer to contract, acceptance has taken place as a matter of law."). Thus, Century Metal has adequately stated a claim for relief in Count One.

### B. Fraud

The second substantive claim is for fraud in connection with the dissolution of MWI and the diversion of its assets to other entities while making misrepresentations to Century Metal that caused it to delay its pursuit of legal remedies against MWI until after the dissolution and diversion had occurred. Defendants have attacked this claim under Rule 9(b)'s particularity requirement. The Court concludes the amended complaint plausibly alleges that the misrepresentations, either by commission or omission, were made by MWI and Chhabra to Century Metal at its offices in Connecticut in the time period of March to April 2011 and that they effectively bought time for Defendants to dissolve MWI and divert its assets to other entities in an effort to avoid payment of the outstanding balance to Century Metal.

---

[11] Misnumbered as ¶ 27 in Count Two.

Consequently, the Court finds that Rule 9(b)'s particularity requirement is satisfied. Count Two, therefore, is viable.

### C. *Unity of Interest and Alter Ego*

Although Chhabra was sued directly in Count Two for fraud, both Chhabra and RKE have been sued indirectly under the theory of unity of interest and alter ego, *i.e.*, "piercing the corporate veil," for the damages sustained by Century Metal (Counts Three and Nine). Whether this theory is applied to the contract claim or the fraud claim, the Court again applies Connecticut law inasmuch as Maryland's choice-of-law rules dictate Connecticut not only as the place of contracting but also as the place of alleged tortious injury to Century Metal. *See Lewis v. Waletzky*, 31 A.3d 123, 129 (Md. 2011) (Maryland adheres to doctrine of *lex loci delicti*; "when a Maryland state court is confronted with multistate tort litigation, that court must apply the law of the place of injury as to all matters of substantive law").

The Connecticut Supreme Court has said that the legal theory of piercing the corporate veil is equitable in nature and is determined according to the circumstances confronting the court in a particular case. *Patel v. Flexo Converters U.S.A., Inc.*, 68 A.3d 1162, 1167 (Conn. 2013). "The standard requires that the corporation, functionally speaking, have no separate existence from the alter ego who controls and dominates the corporation's affairs." *Id.* Connecticut courts have recognized two tests for disregarding a defendant's corporate structure: the instrumentality rule and the identity rule. *Id.* n.7. The instrumentality rule requires, in the absence of evidence of express agency, proof of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in

contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

The identity rule is stated as follows:

If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

As to Chhabra, Century Metal alleges he served as MWI's principal owner, employee, and decision-maker, he has dominated MWI for his own personal financial gain and benefit, and he had exclusive authority and responsibility for MWI's actions. (Am. Compl. ¶¶ 38, 39.[12]) These allegations in addition to Chhabra's filing the dissolution petition and his authorship, as president of MWI, of the payment contract offer letter are sufficient to allow an inference that Chhabra has had unity of interest with MWI and that he has been MWI's alter ego.

With regard to RKE, as earlier noted, RKE participated in the negotiations leading up to the payment contract, solicited similar business from Century Metal, and has the same office address as Worldwide, which is alleged to be a successor to MWI as is RKE. These allegations, although clearly showing that RKE's business was somewhat intertwined with MWI, are insufficient to show that RKE has had unity of interest with MWI or that RKE has been MWI's alter ego. Consequently, Count Three against Chhabra is viable, but Count Nine against RKE is not.

## D. Successor Liability

The remaining counts are pursued under a theory of successor liability against Worldwide (Counts Four and Five), Chhabra (Count Six), T. Chhabra (Count Seven), and RKE (Count

---
[12] Misnumbered as ¶¶ 34 and 35 in Count Three.

Eight). The Court notes initially that Defendants have faulted the amended complaint for alleging that more than one entity is a successor to MWI, thereby advancing an argument that inconsistent theories in a pleading are unacceptable. Inconsistent legal theories are permissible under Federal Rule of Civil Procedure 8(d)(3), and Defendants' argument on this point has no merit.[13]

### 1. *Worldwide Metal LLC*

As to Worldwide, the Defendant points out, and the Court agrees, that the successor liability laws of Connecticut and Maryland are essentially the same as they concern the instant case. (Worldwide's Mot. Dismiss Supp. Mem. 3, ECF No. 58-1.) Thus, even though Century Metal is located in Connecticut and Worldwide is located in Maryland, the standards of the two states on this theory have no significant differences. In the case of *Nissen Corp. v. Miller*, the Maryland Court of Appeals adopted the general rule of nonliability of successor corporations with its four well-recognized traditional exceptions, but declined to adopt a fifth exception for "continuity of enterprise." 594 A.2d 564, 573-74 (Md. 1991). The rule is stated thusly:

> "[A] corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor, unless: (1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration. Thus, the general rule is one of successor nonliability, subject to four 'traditional' exceptions...." (Footnotes omitted.)

*Id.* at 565 (quoting 1 *American Law of Products Liability 3d* § 7:1, at 10-12 (Travers, rev. ed. 1990); *accord* 1 L. Frumer & M. Friedman, *Products Liability* § 2.06[2] (1989); 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122, at 231 (rev. perm. ed. 1990)).

---

[13] Defendants' other argument that faults Century Metal for alleging certain facts "upon information and belief" is equally without merit. In the 1993 Advisory Committee Note to Rule 11(b), it is noted that use of the phrase "upon information and belief" is a permissible way to indicate a factual contention that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis.

Likewise, the rule is stated by the Appellate Court of Connecticut in *Chamlink Corp. v. Merritt Extruder Corp.*, 899 A.2d 90, 92-93 (Conn. App. Ct. 2006):

> "The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation except where the purchaser expressly or impliedly agrees to assume the obligations, the purchaser is merely a continuation of the selling corporation, [the companies merged] or the transaction is entered into fraudulently to escape liability."

(Alteration in original) (quoting 19 C.J.S. 314, Corporations § 657 (1990)). Century Metal alleges that Worldwide Metal LLC was being formed at the same time Chhabra was dissolving Metal Worldwide, Inc., that Worldwide engages in the same type of business (selling scrap metal) as MWI, that Worldwide serves MWI's customers, that Chhabra continues to act through Worldwide to conduct business, and that Worldwide maintains the same officers and assets as MWI. (Am. Compl. ¶¶ 43, 44.[14]) The Court concludes Century Metal has plausibly alleged either that Worldwide is "a mere continuation or reincarnation of the predecessor entity" or that the dissolution of MWI and transfer of assets to other entities including Worldwide was a fraudulent transaction. Either is sufficient as an allegation of successor liability of Worldwide. Consequently, Counts Four and Five are viable claims.

### 2. *Sachin Chhabra*

Because Chhabra is a domiciliary of Maryland, the Court employs the same choice-of-law analysis as it did with Worldwide Metal and comes out at the same place, that is, the rule of law is the same in Connecticut and Maryland. The Court also notes that identical considerations result in the same choice for Defendants T. Chhabra and RKE.

However, application of the doctrine of successor liability to Chhabra is not supported by the allegations of the amended complaint. Indeed, Century Metal alleges that "Sachin Chhabra

---

[14] Misnumbered as ¶¶ 32 and 33 in Count Four.

continues to act through Worldwide Metal to conduct business." (Am. Compl. ¶ 44.c.[15])
Nowhere does Century Metal allege that Chhabra conducts business as a sole proprietor. The logical inference is that business is conducted by Chhabra through a business entity, not by Chhabra acting alone. Thus, the Court need not reach the question whether a sole proprietor could have liability under the successor liability doctrine.[16] The factual allegations are insufficient to support Count Six.

### 3. Tarun Chhabra

The amended complaint includes no allegations to permit an inference that T. Chhabra can be considered a successor to MWI. The only allegations Century Metal makes about this Defendant are that he is an individual domiciled in Columbia, Maryland, and that MWI's dissolution and the transfer of its assets were done fraudulently by T. Chhabra "and/or any other entity." The Court cannot plausibly infer from this that T. Chhabra had either opportunity or authority to engage in MWI's dissolution and subsequent alleged transfer of assets or that he presently operates a business entity of any kind, let alone one that uses MWI's assets and carries on the same business operations. His motion to dismiss will be granted.

### 4. R.K. Enterprises USA Inc.

Century Metal plausibly alleges that RKE possesses successor liability for damages flowing from MWI's breach of contract and from the allegedly fraudulent dissolution of MWI and transfer of its assets. According to the amended complaint, RKE, by the authority vested in it by MWI and Chhabra, was involved in negotiations leading up to the payment contract, continued to solicit the same business from Century Metal, was the transferee of assets from

---

[15] Misnumbered as ¶ 33.c in Count Four.
[16] But the Court notes that the *Chamlink* opinion specifically includes an individual in the successor liability doctrine, and the Court sees no reason to exempt individuals from those potentially liable under this doctrine.

MWI, and continues to operate virtually the same business operations as did MWI. The Court concludes that Count Nine remains a viable claim.

## V. *Conclusion*

After considering the parties' arguments on the remaining issues in Defendants' motions to dismiss, MWI's and Chhabra's joint motion will be granted as to Count Six and otherwise denied, Worldwide's motion will be denied, T. Chhabra's motion will be granted and he will be dismissed from the case, and RKE's motion will be granted as to Count Nine and otherwise denied. A separate order will be entered on these rulings and will also set a briefing schedule on Century Metal's motion for leave to amend its complaint.

DATED this <u>10th</u> day of September, 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge