# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| CENTURY METAL RECYCLING PRIVATE LIMITED, | * | |
| | * | |
| **Plaintiff** | * | |
| **v.** | * | CIVIL NO.  JKB-12-2650 |
| | * | |
| METAL WORLDWIDE, INC., *et al.* | * | |
| **Defendants** | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

### *I. Background*

Pending before the Court are Plaintiff Century Metal Recycling Private Limited's ("Century") motion for summary judgment (ECF No. 208) on four of the remaining seven counts of the Substitute Second Amended Complaint ("Complaint") (ECF No. 162) and Defendants' cross-motion for partial summary judgment on Count One and for summary judgment on Counts Two through Five and Ten of Plaintiff's Complaint (ECF No. 215).[1]  Also pending is Plaintiff's motion for attorney's fees and costs incurred by Plaintiff in connection with the entries of default against Defendants Metal Worldwide, Incorporated, and Worldwide Metals LLC and the Court's subsequent order to vacate those entries of default.  (ECF No. 211.)  The motions have been briefed (ECF Nos. 216–219, 224), and no hearing is required, Local Rule 105.6 (D. Md. 2014).  Plaintiff's motion for summary judgment will be granted in part as to Count One and denied as

---

[1]  "Defendants," as used here, means all Defendants except R.K. Enterprises USA, Inc., which has not participated in the proceedings in this Court since transfer of the case here from the District of Connecticut in September 2012.  Plaintiff indicates it intends to voluntarily dismiss R.K. Enterprises USA, Inc., from the only remaining count against it, Count Eight.  (Pl.'s Opp'n 1 n.2, ECF No. 219.)

to the remaining counts.  Defendants' cross-motion for summary judgment will be granted as to Counts Four and Five and otherwise denied.  Plaintiff's motion for fees and costs will be granted.

## II.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Fed. R. Civ. P. 56(c)(4).

Each cross-motion for summary judgment is viewed separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  "When considering each individual

motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citation omitted).

### III.  *Analysis of Cross-Motions for Summary Judgment*

The Court will not detail all of the many facts included in the record because it would be an unwise use of judicial resources.  This case is headed for trial.  Nevertheless, pertinent facts will be included as relevant to individual issues.

### A.  *Count One – Breach of Contracts*

The Court has carefully reviewed the lengthy filings of the parties and concluded that, although no genuine dispute of material fact exists as to the liability of Metal Worldwide, Incorporated ("MWI") on Count One for breach of the contracts for shipment of scrap metal by MWI to Century,[2] genuine disputes of material fact exist as to the amount of damages to which Century is entitled.  As Defendants have rightly noted, "because of the combination of the parties' complex course of dealing and flawed recordkeeping, the precise amount of that debt still appears to be disputed."  (Defs.' Cross-Mot. Supp. Mem. 29-30.)  These disputes are exacerbated by both parties' references to documents that are not in the record.  At trial, Century will be required to show, with precision, the path of each transaction that was attempted unsuccessfully as to these underlying contracts, and any defense evidence will be held to the same standard.  Which documents are applicable to which transactions will be closely scrutinized by the Court.  Of particular difficulty was the Court's inability to determine the dates of certain documents when the parties' assertions of the date of a document did not match what was on the document.  Also, the Court, thus far, has not been privy to how the parties attribute specific documents to specific transactions.  Despite these obstacles, the Court notes that of all of the

---

[2]  Indeed, MWI concedes liability as to the underlying contracts (but not as to another contract referred to as the "payment contract").  (Defs.' Cross-Motion Supp. Mem. 7, ECF No. 215-1.)

transactions asserted by Century to be the subject of a contractual breach, MWI only provided record citations and argument disputing the correctness of Century's figures with respect to the June 16, 2010, transaction and the September 20, 2010, transaction.  (*See* Defs.' Cross-Motion Supp. Mem. 23-26.)   (The Court uses the dates corresponding to MWI's invoices; other documents relating to those transactions may and oftentimes do show other dates.)  Century's analysis as to the other transactions—those of April 1, 2010, April 9, 2010, June 21, 2010, July 16, 2010, and December 16, 2010—was not disputed by MWI.   The total undisputed transactions amount to $566,125.53, according to the Court's computation.  That figure does not include the portions of the June 16 and September 20 transactions for which the parties disagree as to the correct amounts.   It is unclear how MWI has computed its own offered figure of $382,069.57.[3]  (*Id.* 26.) These differences must be resolved at trial.[4]

In connection with the calculation of damages on the underlying contracts, Defendants have protested Century's inclusion in its omnibus reply on Century's motion and opposition to Defendants' cross-motion of an affidavit by Century's representative, Rajiv Kaushal.  (*See* Defs.' Reply 6-8, ECF No. 224.)   Defendants claim the affidavit is improper because Defendants' cross-motion does not attack the claim in Count One on the underlying contracts.  That is an odd assertion, given that Defendants spend a great deal of energy in their omnibus cross-motion and opposition to Century's motion disputing the proper calculation of the damages that Defendants agree are due in some measure to Century.  Kaushal's affidavit is appropriately responsive to

---

[3]  MWI asserts it should also be given a credit of $4,500 based upon subsequent transactions, which would lower its figure of damages to $377,569.57.  (Defs.' Cross-Motion Supp. Mem. 26 n.23.)  Century acknowledges that no dispute exists as to MWI's figure of $377,569.57 as an amount owed to Century.  (Pl.'s Reply1, ECF No. 219.)  Of course, Century treats that figure as the floor of the damages dispute on the underlying contracts, and not as the total amount due.  This point can be sorted out at trial.

[4]  Because the Court is granting summary judgment for Century as to the payment contract, *infra*, Century will be allowed only one recovery on Count One even if it obtains a favorable outcome at trial on the underlying contracts.  The payment contract was intended to be a settlement of MWI's debt owed to Century on the underlying contracts.

Defendants' argument.  Defendants resort to a technical point by quoting Federal Rule of Civil Procedure 6(c)(2) for the proposition, "Any affidavit supporting a motion must be served with the motion," and implying that one cannot refute by way of affidavit.  (Defs.' Reply 7.) However, in practice, the rule appears to be addressed to the frowned-upon practice of submitting an affidavit too close in time to the conduct of a hearing to permit the opponent a chance to respond.  *See* 4B Charles A. Wright, Arthur R. Miller, and Adam N. Steinman, *Federal Practice and Procedure* § 1170 (4th ed. 2015).  No hearing is being conducted in the Court's consideration of the parties' motions for summary judgment, and Defendants have had ample opportunity to rebut Century's submissions.  *See McGinnis v. Southeast Anesthesia Assocs., P.A.*, 161 F.R.D. 41, 42 (W.D.N.C. 1995) (rule is silent on when reply affidavits must be filed; because contested affidavits do not support motion, but rather reply, rule does not prohibit them from being filed subsequent to motion as reply affidavits).  *See also Hammons v. Computer Programs and Systems, Inc. (CPSI)*, Civ. No. 05-0613-WS-C, 2006 WL 3627117, at *14 (S.D. Ala. 2006) ("nothing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief"); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 635, 636 (D. Kan. 2005) (denying motion to strike affidavits filed with reply brief; purpose of rule "is to avoid unfair surprise and permit the court to resolve motions on the merits").  Defendants' contention is without merit.

Count One also includes allegations of breach of another contract, referred to by the parties as the "payment contract."  In seeking summary judgment in MWI's favor on this part of Count One, Defendants have reargued a point addressed by the Court in an earlier order, *i.e.*, whether the language of the April 8, 2011, letter from Plaintiff's counsel to Defendants Sachin

Chhabra and MWI repudiated the April 4, 2011, contract by MWI to repay Century in installments for amounts owed due to breach of the underlying contracts.  (*See* Defs.' Cross-Motion Supp. Mem. 28.)  This is a minor variation on their earlier unsuccessful argument that the April 8 letter constituted a counteroffer to the April 4 letter.

The Court ruled against Defendants' earlier argument on this point, instead concluding the April 8 letter was an acceptance of the offer in the April 4 letter.  (Sept. 10, 2013, Mem. 7, ECF No. 141.)  Further, the Court concluded the additional language in the April 8 letter about nonwaiver of legal rights and remedies did not alter the terms of the April 4 payment contract. (*Id.*)  Now, Defendants say that the evidence shows the April 4 letter was accepted on April 4 in New Jersey and cite a New Jersey case, *Gaglia v. Kirchner*, 721 A.2d 1028 (N.J. Super. Ct. App. Div. 1999), in an effort to recast the April 8 letter as a repudiation under New Jersey law.  Even if New Jersey law applies, however, the Court now rules, similarly to the Court's ruling earlier, that the April 8 letter was not a repudiation of the April 4 letter.  The language employed in the April 8 letter is not the language of repudiation.  The *Gaglia* case involved very different language found by the court there to express an intention not to be bound and also involved prior communications that figured significantly in the court's decision; the April 8 letter in this case does not include similar language or rest on similar prior communications and, consequently, the holding in the *Gaglia* case does not change the result here.  Additionally, Defendants' contention that Century's designated corporate deponent interpreted the April 8 letter in a different way (Defs.' Reply 4, ECF No. 224) bears no weight; the Court's interpretation of the April 8 letter is based purely upon the language of that document, not upon what someone else thought it might mean.

Moreover, as the Court previously noted, subsequent communications by Sachin Chhabra and his brother Tarun Chhabra with Century personnel ratified the payment contract. (Sept. 10, 2013, Mem. 7-8; *see also* Pl.'s Mot. Summ. J. Ex. C-10, Ex. H ¶¶ 15-23.) Defendants' sole dispute of fact on the validity of the April 4 letter's embodiment of the payment contract rests on Sachin Chhabra's disavowal of the authenticity of his signature, as president or principal of MWI, on the letter. (Defs.' Cross-Mot. Supp. Mem. 10, citing Sachin Chhabra's affidavit and deposition testimony.) The Court is highly skeptical that the signature is not authentic. Other documents signed by Sachin Chhabra that are in the record have a very similar, if not identical, signature. (*Compare* Apr. 4, 2011, letter, Pl.'s Mot. Summ. J., Kaushal Aff. Aug. 13, 2015, Ex. C-8, *with, e.g.*, Sachin Chhabra Aff. Sept. 9, 2015, Defs.' Cross-Mot. Ex. 2; Sachin Chhabra Aff. Apr. 20, 2015, Pl.'s Mot. Summ. J. Ex. D; Bank Signature Card, May 14, 2011, Pl.'s Ex. E; Signed Checks, Pl.'s Ex. E; Corporate Documents, Pl.'s Ex. F.) But because MWI subsequently ratified the payment contract, Sachin Chhabra's purported disclaimer of the authenticity of his signature does not create a *genuine* dispute of *material* fact as to the binding nature of the payment contract. The evidence shows MWI never made a payment under this contract.

As a result, the Court concludes Century is entitled to judgment as a matter of law on the portion of Count One alleging MWI's breach of the payment contract. By the contract's terms, MWI, in the event of default as occurred here, is bound to pay Century $700,000 plus interest computed at 15% per annum compounded monthly from April 1, 2011, to the date of payment. Partial judgment, incorporating these terms, will be entered against MWI on Count One. Defendants' cross-motion for summary judgment on Count One will be denied.

### B.  Count Two – Fraud

Count Two alleges MWI and Sachin Chhabra committed fraud against Century in two related respects:  First, prior to and including April 8, 2011, Century alleges that MWI and Sachin Chhabra misrepresented the financial condition and concealed the pending corporate dissolution of MWI; second, Century alleges these two Defendants subsequently made misrepresentations to Century about their intent to honor the terms of the payment contract and/or pay the outstanding balance when they had no intention of doing so.  (Compl. ¶¶ 29-31.) Century alleges Defendants made these misrepresentations to induce Century to enter into the payment contract and to delay Century from pursuing legal remedies to obtain payment, while diverting funds to other entities to avoid collection.  (*Id.* ¶ 32.)  Century alleges it relied on Defendants' misrepresentations by accepting their offer to enter into the payment contract and by delaying its pursuit of available legal remedies, thereby allowing Defendants sufficient time to dissolve MWI and divert available assets to other Defendants.  (*Id.* ¶¶ 33-36.)

In assessing Century's argument on Count Two, the Court applies Connecticut law inasmuch as the alleged tortious injury occurred in Connecticut, where Century's business operation in this country was based at the time of the events in question.  *See Lewis v. Waletzky*, 31 A.3d 123, 129 (Md. 2011) (Maryland follows rule of *lex loci delicti* when confronted with multistate tort litigation). [5]  Under Connecticut law, fraud is defined as follows:

> Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker;

---

[5]  Despite Maryland's adherence to *lex loci delicti* (the law of the place of injury) for choice of law in multistate tort cases, Defendants argue that the place of the misrepresentation, which they argue was New Jersey, governs the choice of law.  (Defs.' Cross-Motion Supp. Mem. 32 n.29.)  Only one of the alleged misrepresentations occurred in New Jersey, *i.e.*, what Sachin Chhabra promised in the April 4, 2011, meeting.  All of the other representations were made to Rajiv Kaushal of Century in Connecticut.  The Court sees no value in parsing the proof on Count Two, especially when Defendants indicate the choice of law is immaterial.  (*Id.*)

(3) the statement was made with the intent of inducing reliance thereon; and
(4) the other party relied on the statement to his detriment. . . .

*Reville v. Reville*, 93 A.3d 1076, 1087 (Conn. 2014) (internal quotation marks and citation omitted).

Further, the Connecticut Supreme Court has said,

Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment. . . .

*Id.* (alterations in original) (internal quotation marks and citation omitted).

In addition, "a promise to do an act in the future, when coupled with a present intent not to fulfil the promise, is a false representation." *Paiva v. Vanech Heights Constr. Co.*, 271 A.2d 69, 71 (Conn. 1970); *Duplissie v. Devino*, 902 A.2d 30, 38 (Conn. App. Ct. 2006).

The undisputed facts show Sachin Chhabra emailed Mohan Agarwal, principal of Century, on February 14, 2011, and pledged to "load all [Century] pending containers for as soon as possible and this is my top most priority to complete." (Defs.' Cross-Mot. Ex. 1, ECF No. 217-1, at Century_1214.) Sachin Chhabra made the decision on February 21, 2011, to dissolve MWI. (Articles of Dissolution, Defs.' Cross-Mot. Ex. 1 at Century_0067, 0068.) On March 21, 2011, the articles were filed with the Florida Secretary of State and indicated the effective date of MWI's dissolution would be April 30, 2011. (*Id.*) Also on March 21, 2011, Sachin Chhabra emailed Agarwal, apologized for not being able to load scrap metal owed to Century, and then stated: "The amount due on me and I will arrange to refund the same to [Century] in few installments and the dates for same we can discuss when you are coming to USA early next month." (Defs.' Cross-Mot. Ex. 1 at Century_0843.) On April 4, 2011, when

the payment contract was created, Sachin Chhabra met with Agarwal and others from Century, but did not notify anyone from Century that MWI had filed for dissolution on March 21, 2011. (Sachin Chhabra Dep. 113:11-20, Pl.'s Mot. Summ. J. Ex. B.)   The payment contract's first installment payment was for $250,000, due to Century on April 15, 2011.   (Apr. 4, 2011, letter, Pl.'s Ex. C-8.)

From April 15 to April 20, 2011, an email exchange occurred between Century's representative, Rajiv Kaushal, and Sachin Chhabra, during which Kaushal reminded Sachin Chhabra about the $250,000 payment due April 15 and asked for a remittance copy of the wire, and Sachin Chhabra's response was, "Sir sorry for the delay this wed or Thur we will send it. I,m still in India and banks were closed all most all last week."   (Defs.' Cross-Motion Ex. 1 at Century_0877, 0878.)   Kaushal exchanged several text messages with Sachin Chhabra and Tarun Chhabra between May 24, 2011, and June 20, 2011; in those messages, the Chhabra brothers continued to promise to send funds to Century.   (Kaushal Aff. ¶¶ 18-23, Pl.'s Ex. H.)

Defendants argue Century cannot satisfy the necessary elements of detrimental reliance or resulting damages in its fraud claim.   Under Connecticut law, a plaintiff can only prove detrimental reliance by providing evidence of injury.   *Stewart v. Cendant Mobility Servs. Corp.*, 837 A.2d 736, 746-47 (Conn. 2003) ("reliance . . . may take the form of action or forbearance . . . [but] must result in a detrimental change in the plaintiff's position").   To claim detrimental reliance through forbearance, the plaintiff must prove "the plaintiff actually *would have acted* in the absence of the promise."   *Id.* at 747.   Century's proof as to detrimental reliance, regarding its forbearance of legal action for roughly three months, is not compelling, but sufficient to go to a jury, thereby defeating Defendants' request for summary judgment on Count Two.   By the same

10

token, it is not sufficient to warrant summary judgment in Century's favor, especially in light of Century's demand for punitive damages.

### C.  *Count Three – Unity of Interest and Alter Ego as to Sachin Chhabra*

Both sides also seek summary judgment on Count Three.  This count alleges, "The unity of interest and ownership between Defendant Sachin Chhabra and Defendant Metal Worldwide is such that said corporation was and continues to be the alter ego of Defendant Sachin Chhabra and/or the independence of the corporation has, in effect, ceased to exist."  (Compl. ¶ 41.) Consequently, Century requests the Court to pierce MWI's corporate veil and hold Sachin Chhabra personally liable for all damages sustained by Century.  (*Id.* ¶ 42.)

Defendants again raise the issue of choice of law, contending that perhaps the law of Florida, as the state of MWI's incorporation, applies, but also arguing that the choice does not matter because Century's proof falls short, regardless of whether Florida or Connecticut law applies.  (Defs.' Cross-Mot. Supp. Mem. 36 n.32.)  The Court applies Connecticut law to this question.  The Connecticut Supreme Court has said that the legal theory of piercing the corporate veil is equitable in nature and is determined according to the circumstances confronting the court in a particular case.  *Patel v. Flexo Converters U.S.A., Inc.*, 68 A.3d 1162, 1167 (Conn. 2013). "The standard requires that the corporation, functionally speaking, have no separate existence from the alter ego who controls and dominates the corporation's affairs."  *Id.*  Connecticut courts have recognized two tests for disregarding a defendant's corporate structure:  the instrumentality rule and the identity rule.  *Id.* n.7.  The instrumentality rule requires, in the absence of evidence of express agency, proof of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must

11

have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

The identity rule is stated as follows:

If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

Defendants do not dispute that Sachin Chhabra exercised complete domination over MWI or that all corporate decisions were made by him. Nor do they dispute that MWI's funds were used to make car payments on BMW, Acura, and Honda vehicles that MWI did not own or dispute that MWI's funds were used to make payments of apartment rent for Tarun Chhabra, who was not, officially, at least, an MWI employee. Century presents these as examples of expenses—authorized by Sachin Chhabra—that depleted MWI's funds that otherwise could have been used to make good on the debts owed by MWI to Century. Defendants try to downplay these expenses as "nothing fraudulent – or even remarkable." (*Id.* 37.) Neither side's position is implausible. Summary judgment will be denied to both Century and to Defendants.

### D. Counts Four and Five – Successor Liability as to Worldwide Metals

As to Counts Four, Five, and Ten, the Court again applies Connecticut law. The rule of successor liability is stated thusly:

"The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation except where the purchaser expressly or impliedly agrees to assume the obligations, the purchaser is merely a continuation of the selling

corporation, [the companies merged] or the transaction is entered into fraudulently to escape liability."

*Chamlink Corp. v. Merritt Extruder Corp.*, 899 A.2d 90, 92-93 (Conn. App. Ct. 2006) (alteration in original) (quoting 19 C.J.S. 314, Corporations § 657 (1990)).[6]

Worldwide Metals LLC ("Worldwide") was set up by Sachin Chhabra's wife, Seloni Chhabra, during the same time period that Sachin Chhabra was planning and executing the dissolution of MWI.  (*See* Seloni Chhabra Dep. May 6, 2015, 9:17—10:2; 11:12-13; 12:1-18; 13:14—14:11, Defs.' Cross-Mot. Ex. 6; Worldwide Metals LLC Articles of Organization, filed Feb. 8, 2011, Pl.'s Reply Ex. C.)  Seloni Chhabra chose the name of the company because the words were familiar to her based upon the name of her husband's company.  (Seloni Chhabra Dep. 18:5-11.)  She intended the new company to be an export/import scrap metal business and she intended to hire her husband.  (*Id.* 12:9-13; 21:18—22:2; 23:1-10.)  After researching the business, she decided it was not her "cup of tea" and did not go forward with it.  (*Id.* 21:9-11.)  Worldwide had no employees, no customers, no suppliers, and no assets; it filed no tax returns; Seloni Chhabra kept no financial records; and she derived no income from Worldwide.  (*Id.* 29:17—30:7; 30:16-20; 31:1-11; 31:17-19; 32:18-20.)

---

[6]  At an earlier stage of the case, the Court noted the similarity of Connecticut's law on successor liability to Maryland's law:

> "[A] corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor, unless: (1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration.  Thus, the general rule is one of successor nonliability, subject to four 'traditional' exceptions...."  (Footnotes omitted.)

*Nissen Corp. v. Miller*, 594 A.2d 564, 565 (Md. 1991) (quoting 1 *American Law of Products Liability 3d* § 7:1, at 10-12 (Travers, rev. ed. 1990); *accord* 1 L. Frumer & M. Friedman, *Products Liability* § 2.06[2] (1989); 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122, at 231 (rev. perm. ed. 1990)).  (*See* Mem. Op. 11, Sept. 10, 2013, ECF No. 141.)

It is not implausible to conclude that Worldwide was intended to be a successor to MWI, but the absence of evidence of Worldwide's actual operation as a successor to MWI requires the Court to conclude no genuine dispute of material fact exists and Worldwide is entitled to judgment as a matter of law on Counts Four and Five.

### E.  Count Ten – Successor Liability as to TCC Wireless

The evidence before the Court generates a jury question as to whether TCC Wireless, Inc. ("TCC"), may be considered the successor to MWI.  TCC is a company founded by Sachin Chhabra's brother, Tarun Chhabra.  MWI and TCC shared office space in several, consecutive locations in Florida.  (Pl.'s Ex. F, Ex. G.)  In addition, after MWI dissolved, TCC moved its principal place of business to the same address in Columbia, Maryland (Pl.'s Ex. G at Century_0044), that was provided to this Court as Sachin Chhabra's place of business (Defs.' Mot. Withdraw Attorney ¶ 3, ECF No. 159); defense counsel further noted the same Columbia, Maryland, address was "the last known address for Metal Worldwide, Inc., Worldwide Metal, LLC, and TCC Wireless, Inc." (id.).

MWI and TCC shared the services of Bryan Woods, a bookkeeper and administrator; MWI's payroll was paid by TCC, and MWI in turn paid TCC.  (Sachin Chhabra Aff. ¶ 4, Sept. 9, 2015, Defs.' Cross-Mot. Ex. 2; Tarun Chhabra Aff. ¶ 3, Sept. 9, 2015, Defs.' Cross-Mot. Ex. 5.) Before the Spring of 2011, TCC and Tarun Chhabra "were primarily engaged in the cell-phone business." (Tarun Chhabra Aff. ¶ 2, Sept. 9, 2015.)  In June or July 2011, Sachin Chhabra went to work at TCC, where he bought and sold scrap metal (including Zorba, the scrap metal at issue in this case) and cell phones.  (Sachin Chhabra Dep. 93:12—94:12.)  He was working with the same suppliers he had used while working at MWI.  (Id. 94:13-16; 178:5-13.)  He gave Tarun Chhabra permission for access to the MWI web site and to copy everything from there for TCC

14

after MWI's dissolution.  (*Id.* 157:4-15.)  When Woods was working for MWI, he kept a database of vendors and consignees in QuickBooks™; Woods imported the MWI database into TCC's database.  (Woods Dep., 120:13—122:12, July 13, 2015, Pl.'s Ex. I.)

On May 14, 2011, MWI's corporate signature card was updated by Sachin Chhabra to show Tarun Chhabra as Vice President of MWI; both of them signed the card and provided their driver's license information.  (Pl.'s Ex. E at Century_0106.)  Two days later, a wire transfer for $100,000 was made from MWI to TCC.  (*Id.* at Century_0113.)  But at least as early as October 6, 2009, Tarun Chhabra's signature regularly appeared on checks written to TCC on MWI's checking account.  (*Id.* at Century_0116 *et seq.*)  Further, Sachin Chhabra in 2013 utilized an email address, in correspondence with Century, of sachin@tccmetals.com; he attached a sales contract from TCC Impex USA for scrap metal to be delivered to Century.  (Pl.'s Ex. C-14 at Century_0906 to Century_0912; *see also* Pl.'s Ex. C-1 at Century_1076.)  Sachin Chhabra testified in his deposition that TCC Wireless was doing business as TCC Impex USA; they were, he said, the same company.  (Sachin Chhabra Dep. 91:14—92:1.)

On this evidence, a jury could conclude that TCC and MWI engaged in the same business and that TCC was a mere continuation of MWI following MWI's dissolution.  Defendants plausibly assert, in effect, that this evidence simply shows the brothers' businesses operated in tandem.  A genuine dispute of material fact exists as to whether TCC bears successor liability for MWI's conduct toward Century.  The motions for summary judgment will be denied as to Count Ten.

### IV.  *Analysis of Plaintiff's Motion for Attorneys' Fees & Costs (ECF No. 211)*

In granting MWI's and Worldwide's motion to vacate the Clerk's entries of default, the Court noted the governing standard:

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

*Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006), *quoted in* Mem. Op. 4, Aug. 17, 2015, ECF No. 209.   Further, the Court noted that the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."   *Colleton Preparatory Academy v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010).   Thus, both Rule 55(c) and Rule 60(b) "are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments."   *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969).   If any doubt exists as to whether relief should be granted, it is to be "resolved in favor of setting aside the default so that the case may be heard on the merits."   *Id.*

The Court faithfully applied that standard, leaving open only consideration of the sixth factor:  "the availability of sanctions less drastic."  (Mem. Op. 5-6, Aug. 17, 2015.)  Specifically, the Court stated:  "The question of a lesser sanction than default judgment is a close call, and the Court does not find unreasonable Plaintiff's request for its costs connected with opposing Defendants' motion."  (*Id.* at 6.)  Before ruling on the appropriateness of Century's request for costs and fees, the Court stated it would "withhold any award of fees and costs incurred by Plaintiff as to Defendants' motion and will consider the question after Plaintiff submits its detailed request for the same."  (*Id.*)

Century has now submitted that detailed request (ECF No. 211), to which Defendants have filed their opposition (ECF No. 216).  Defendants say it would be unprecedented for a court to vacate an entry of default while also awarding Plaintiff fees and costs for opposing

Defendants' motion.  (Defs.' Opp'n 1-2.)  Defendants' argument ignores what the Court has just noted—that the Court deferred ruling on the sixth factor of *Payne* until it had more information from Century.  Moreover, Defendants misread the governing precedent.  The Fourth Circuit in *Colleton* specifically addressed the situation where that Court found good cause to support the defendant's request and further found the district court abused its discretion by not considering the availability of a less drastic sanction than refusal to vacate the entry of default.  616 F.3d at 418-19.  Defendants seem to suggest that consideration of a less drastic sanction is taken off the table if good cause is found to allow the vacating of an entry of default.  But *Colleton* certainly does not stand for that proposition, and the Court does not adopt it.  Defendants' argument on this point is without merit.

Defendants alternatively contend Plaintiff's counsel's submission is excessive in number of hours and claim Plaintiff's counsel's hours should be parsed to reflect the difference within its omnibus filing between hours spent replying to Defendants' opposition to Century's motion for default judgment and hours spent opposing Defendants' motion to vacate the entry of default. (Defs.' Opp'n 2.)  Defendants' argument ignores that they also made an omnibus filing, opposing Century's motion for default judgment and moving to vacate the entry of default. (ECF No. 188 and 188-1.)  It also ignores that Defendants did not parse their own filing in the way that they now say Century should have done.

For the most part, the Court finds the accounting of attorney time to be reasonable and appropriate in Plaintiff's request, with one exception:  The description given to the 1.2 hours expended by Brian D. Rich, Esq., indicates his time was spent on general litigation strategy and discovery issues.  (Pl.'s Mot. Ex. 2-B, ECF No. 211-7.)  That time, amounting to $360, will be disallowed.  Otherwise, Defendants did not dispute the propriety of the rates charged by

Century's counsel, and the Court concludes they are in line with rates typically charged by members of this Court's bar.  Plaintiff's motion for fees and costs, with slight qualification, will be granted.

## V.  Conclusion

Considering the record before the Court, Plaintiff is entitled to partial summary judgment on Count One as to liability, but not damages, on the underlying contracts and as to the payment contract.  In addition, Worldwide Metals LLC is entitled to summary judgment on Counts Four and Five.  Otherwise, the motions for summary judgment will be denied.  Finally, the Court concludes Plaintiff's motion for fees and costs incurred in opposing Defendants' omnibus motion to vacate the entries of default against MWI and Worldwide Metals LLC and opposition to Plaintiff's motion for default judgment is meritorious and should be granted.

A separate order will enter.

DATED this 5th day of February, 2016.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge